■ KEW GARDENS HILLS HOUSING ASSOCIATES (GARAGE UNITS), Respondent, v OFFICE OF RENT CONTROL, Appellant.—Judgment, Supreme Court, New York County, entered April 17, 1975, granting the petition to the extent of remanding the matter to the respondent to allocate garage rentals to those apartments assigned garage space, unanimously reversed, on the law, and vacated, the application denied and the petition dismissed, without costs and without disbursements. The petitioner owns a complex of 424 garden apartments containing 41 garage spaces assigned to tenants from a waiting list. When the maximum base rent system (MBR) of rent control became effective, under section Y51-5.0 (subd a, par [3], as added by Local Laws, 1970, No 30 of City of NY) of the Administrative Code of the City of New York and section 24 of the New York City Rent, Eviction and Rehabilitation Regulations, the MBR orders on the 424 apartments were based on an apportionment of the actual income collected from the entire complex offset by the expenses. The income did not include the garage rentals while the expenses included those attributable to the garage spaces. The result did however reflect the statutorily necessary 8.5% return to the landlord based on the assessed valuation of the complex including garages. Because the garage rental had been excluded, 35 garage-renting tenants challenged the orders and they were recalculated to include that income. Then the landlord protested and, when the protest was denied in an order and opinion by the respondent, it commenced this article 78 proceeding. Special Term, reading the opinion sustaining the orders, held the determination to be arbitrary. As the court stated, if "specified tenants assigned the limited number of garage spaces no longer pay a separate rent for same", it would be a "manifest inequity" because "Under such a program tenants who have no access to the garage space are nonetheless largely subsidizing garage space for the comparatively few tenants who do have access to that space". It also found that, while this would not be reason enough, in the absence of nongarage tenant protest, to sustain the complaint of a landlord receiving a fair return on its investment in garage spaces even though it be allocated to the complex as a whole, it was sufficient here because there was no showing that the landlord had a return equivalent to that when the garage rentals were segregated and because its expected income from garage rentals would be stultified by a 7.5% limitation on annual increases in maximum collectible rents. This does not seem, however, to be the result contemplated by the respondent's opinion sustaining the order. It stated: "The only purported complaint left to which the landlord can point is that allegedly in some instances the individual MBR for those few 35, of the 424 apartments herein, did not take a larger share of the gross MBR to acknowledge their garages. It should be noted that in each case where the maximum base (shelter or apartment) rent could not accommodate the rental for the garage, then the garage rent would *'pierce'*, but not adjust the MBR. Thus while the formula rent was untouched it was and is *no* ceiling which provides any tenant with a 'rent free' garage." Certainly this means that garage rentals will be charged to those using them, and we interpret the full quotation to mean that the protested orders provide that a garage tenant must pay this garage rent over and above the maximum collectible rent referable to his apartment, whether or not his maximum base rent is exceeded by all or only part of the amount paid for garage space. This

provision as so construed, apparently overlooked by Special Term, obviates the reason for its holding. The respondent's determination is not otherwise arbitrary. It is reasonable to include garage income on a complex-wide basis to establish the MBR because both the expenses and the 8.5% return on valuation include garage factors and because the garage spaces do shift among the apartment tenants according to the waiting list. While the respondent's opinion sustaining the protested order provides, in effect, that the landlord may receive separate garage rent from those using garage spaces while at the same time the gross MBR includes garage income, as a practical matter, when the gross is allocated to all of the tenants, the difference in the MBR is miniscule. "Efforts at solution of serious problems will not wait on perfect knowledge or the application of optimal methods of alleviation to the exclusion of trial and error experimentation" (Oriental Blvd Co. v Heller, 27 NY2d 212, 219). Furthermore, as the respondent itself points out, it was the intention of the 1970 amendment to provide a method of increasing controlled rents. There being a rational basis for electing this method to establish MBR as opposed to allocating garage rental income separately to the apartments using garage spaces, the court cannot interfere with the administrative process (Matter of Plaza Mgt. Co. v City Rent Agency, 48 AD2d 129, affd 38 NY2d 772). Concur—Stevens, P. J., Markewich, Kupferman, Capozzoli and Lynch, JJ.