KEW GARDENS HILLS HOUSING ASSOCIATES (GARAGE UNITS), Respondent, v OFFICE OF RENT CONTROL, Appellant.

First Department, April 26, 1976

Stephen H. Deutschmeister of counsel (Harry Michelson, attorney), for appellant.

Robert S. Fougner of counsel (McLaughlin & Fougner, attorneys), for respondent.

Per Curiam. By memorandum decision of December 11, 1975 (50 AD2d 753), we reversed a judgment of Special Term that remanded this matter to the respondent to allocate separate garage rentals for those apartments of the petitioner enjoying the use of garages. We held that the remand was unnecessary because we interpreted the respondent's order that is the subject of this article 78 proceeding to provide that a garage tenant would be required under any circumstances to pay garage rent over and above the maximum collectible rent for his apartment. We have since granted reargument (51 AD2d 702) because the petitioner has demonstrated and the respondent conceded that the latter did not intend this interpretation. They have now clarified their contentions in the briefs on the reargument and provided a full explanation of the operation of the maximum base rent (MBR) formula of rent control as it applies to the petitioner's property.

When the MBR system of rent control went into effect, section Y51-5.0 (subd a, par [3]) of the Administrative Code of the City of New York (added by Local Laws, 1970, No. 30 of City of N.Y. and section 24 of the New York City Rent, Eviction and Rehabilitation Regulations) specified a formula by which a building's MBR was to be determined. It has five basic components: real estate taxes, water and sewer charges, operating and maintenance expenses, vacancy and collection losses and an 8.5% return on capital value. Once a building MBR is computed by the formula, it is apportioned among the individual apartments taking into consideration the number of rooms each has and the floor it is on. Individual results are

adjusted for two deviations from the norm, when the tenant pays for heat in addition to rent and when the landlord provides gas and electricity. (See Report of the City of New York Housing and Development Administration to the City Council, "The Maximum Base Rent Formula: A Cost Index Approach to Controlled Rents".) Since section Y51-5.0 (subd a, par [6]) of the code provides that an individual MBR cannot serve to reduce rent then legally collectible, the District Rent Director's order must not only establish each MBR but also find the maximum collectible rent (MCR) for that unit. Otherwise, the MBR acts as a rent ceiling.

Under the MBR system maximum collectible rent that is less than the MBR may be raised to that ceiling at a rate no greater than a 7.5% annual increase and the MBR itself may be recomputed periodically. It should be noted that income to a landlord is not a component of the establishment of the MBR.

The petitioner owns a complex of 424 apartments containing 41 garages assigned to tenants from a waiting list. When the MBR for each building had been established, it was apportioned and the individual orders establishing each tenant's MBR and MCR were issued. The MBR so found gave the landlord an 8.5% return on the capital value of its property including the garages. However, 35 of the garage-renting tenants protested to the District Rent Director that their orders did not indicate in their MCR that they were paying garage rent, that in appearance there was no difference in their orders than in those of similar apartments that had no garages.

This was a meaningful protest. For example, if the garage rent were included in the order for any tenant whose combined garage and apartment rent were less than the MBR, the latter would provide an absolute ceiling which annual rent increases could not penetrate. If the garage rent were not included, the MBR would be a ceiling for apartment rent only, with garage rent being paid over the ceiling.

The District Rent Director amended the orders to reflect the garage rent and this caused the landlord to protest to the respondent. It asserted several grounds, the pertinent one here being that if an individual order were recomputed to show garage rent, its MBR itself should be recomputed as there is no reasonable basis for having the same MBR for an apartment with as without a garage. It was and is the land-

lord's argument that, if individual MBR orders can be adjusted for the heat and gas and electricity variations, it is reasonable to adjust them for garages, especially since section Y51-5.0 (subd a, par [3]) of the code does not specify the variations but is broad enough to permit it, the language being "after giving consideration to such factors as may be prescribed by formula, such as size and location of housing accommodations and number of rooms".

The respondent disallowed the protest holding that the establishment of the same MBR with or without a garage would not provide any tenant with a rent free garage because where the rent collectible for the garage could not be accommodated in the MBR with the apartment rent, it would exceed or pierce the MBR to that extent since the MBR cannot serve to reduce legally collectible rent. The petitioner then brought this article 78 proceeding to review the respondent's determination.

The petitioner landlord complains that the respondent's reasoning, though true in the abstract, is without practical application here because most of the garage-renting tenants do not pay total collectible rent higher than their MBR. Most pay less, but close enough so that, given the maximum annual increases, the MBR, if not recomputed, will in a few years become a ceiling. Ultimately then, the petitioner argues, tenants of the same type of apartment will pay the same rent whether they have garages or not, and all apartment owners will be subsidizing garages for the few who will enjoy them.

The Special Term found this application of the MBR formula "a manifest inequity" and found that, even though no non-garage tenant had protested, the landlord had the standing to do so because, while it would receive a 8.5% return on its capital value, there was no showing that its return was equivalent to what it was previously receiving from separate garage rentals, and that the 7.5% annual limitation on increases would reduce its return on garage rentals.

We have a function more limited than a determination whether the application of the MBR formula creates an inequity between garage and non-garage tenants. Once again, the rent office's specific application of a broad statutory directive is questioned—its application of the MBR formula without adjustment for garage-renting tenants as for the heat and gas and electricity exceptions. We are restricted to a determination whether there is a rational basis for the respondent's

action *(Matter of Plaza Mgt. Co. v City Rent Agency,* 48 AD2d 129, affd 37 NY2d 837). If there is, imperfection should be ignored *(Oriental Blvd. Co. v Heller,* 27 NY2d 212, 219), and, in this regard, we note that no non-garage tenant has complained and that the remedy proposed by the landlord has the fortuitous effect of increasing its income. Also, the landlord's argument has validity only if the respondent foregoes its right to recompute the MBR orders periodically.

It is basic to the respondent's reasoning that the MBR formula does not envision the utilization of income; it is a cost approach to rent control. The garages have been considered in every aspect required, their expense to the landlord and in the return which the code permits. The taxes, water and sewer rents going into the MBR determination are for the petitioner's property inclusive of garages. The other expense figures used are those of the landlord and those attributable to the garages have not been deducted from them. The capital value upon which the landlord is given an 8.5% return includes the value of the garages and were the MBR of the garage tenants adjusted to increase them by the amount of garage rental, the return to the landlord would be even greater.

Were the respondent to adjust the MBR orders to include garage rent it would violate the cost approach of the formula. This could not be assuaged by characterizing it an adjustment in the nature of the heat and gas and electricity exceptions. These are truly costs, properly finding place in a cost approach formula. When the liability for these costs falls out of the ordinary, an adjustment is warranted. A garage is not a cost; it is a capital asset. While it is productive of both costs and a return, both of these have already been taken into account in the formula, unlike the exceptional gas, heat and electricity expenses. Therefore no similar adjustment is warranted.

While better solutions may be demonstrable, the petitioner has failed to show that the respondent had no rational basis for its determination. We adhere to our reversal. The judgment should be reversed, on the law, and vacated, the application denied and the petition dismissed, without costs and without disbursements.

KUPFERMAN, J. (dissenting). As long as this court in its previous memorandum was prepared to allow for the garage rent to "pierce" but not adjust the MBR, a form of compromise, I was in agreement.

However, now the court makes a choice between a favored tenant with a separate garage having the same MBR as a tenant without a garage, as against the determination of Special Term allocating separate garage rentals for those tenants enjoying the use thereof. Under these circumstances, the determination by the Office of Rent Control, which this court now accepts, is unreasonable, and I would affirm the judgment of Special Term, directing that the matter be remanded to the Office of Rent Control to allocate separate garage rentals.

STEVENS, P. J., MARKEWICH, CAPOZZOLI and LYNCH, JJ., concur in *Per Curiam* opinion; KUPFERMAN, J., dissents in an opinion.

On reargument, judgment, Supreme Court, New York County, entered on April 17, 1975, reversed, on the law, and vacated, the application denied and the petition dismissed, without costs and without disbursements.